Welcome back to the meat locker that doubles as a courtroom. Our next case is 23-1242 Adams Outdoor Advertising v. Beaufort County. Mr. Timmels. Yes, your honor. Thank you, your honors. May it please the court, my seventh grade daughter is currently on a school field trip from Charleston to Washington, D.C. And I noticed yesterday in sort of a cosmic twist of fate, her itinerary states that this morning at 930, she was at a White House study visit to debate, quote, what restrictions, if any, are reasonable on freedom of speech. And so she's smarter than me, but she doesn't have a cell phone. So I wasn't able to glean any helpful tidbits or advice from her discussion this morning. Your honors, Jeff Timmels representing Appellant Adams Outdoor. The district court order in this case should be reversed for a number of reasons. Chief among them is the unwarranted expansion of the pending ordinance doctrine. The pending ordinance doctrine has never been applied in South Carolina or anywhere else where changes in the law are not contemplated until after the filing of permit applications. The test is set forth in Sherman v. Revis is, number one, whether the governing body has resolved to consider a particular scheme of rezoning, and number two, whether there's been public notice given of the change. It's very rarely applied. It's only been recognized in South Carolina and accepted once. It's been accepted once by this court in the Covenant Media v. City of North Charleston case. What claims are you talking about now? What counts? So the court, the district court dismissed the entire complaint. I understand that. Yes, on the basis of mootness for the claims under the pending ordinance doctrine. Okay, but which, 1-3-5-8 or 2-4-6-7-9? Which one? Because you make different arguments with respect to each. The latter, your honor. Okay. And so with respect to the mootness argument, and we can take them in that order first, the pending ordinance doctrine is simply impermissible to apply that doctrine to applications before the legislative process begins. In this case, there's no dispute that the date the applications were originally submitted was April 27th of 2021. Is that what you allege in the complaint? That is alleged in the complaint only through way of exhibits attached to the complaint, which are incorporated within the complaint pursuant to rule. The complaint alleged that the May dates, right? Not the April dates? The complaint alleged that applications were submitted in May and June. And the, at that point in time, the. But to follow up on the chief's question. Yes. With respect to the mootness, you were challenging provisions of the former ordinance, which are no longer in existence. Yes, your honor. And that's done quite frequently and it doesn't render the claims moot. No longer, the provisions that you're challenging are no longer in existence. How do you get around? How do you get around mootness? Well, because they were in existence at the time that we filed the permit application. They're not in existence now. They're not in existence now, but in the city of Austin case recently decided by the. In order for them to be in existence, we would have to overrule our covenant media decision because that took a particular view of what the, of the pending order doctrine. And it seemed to me that I wasn't on that panel, but it seemed, it seemed a binding precedent here that was right on point as to what constituted a pending order. And I feel like I'm being asked essentially to overrule the covenant media case. No, your honor, not at all. I'm not asking that this court overrule the covenant media case. The covenant media case involved two sort of sets of applications. There was one application that was filed in December and that was filed. The covenant media says with respect to the if you're challenging things that are no longer in existence under, under our precedent, that's not. At the time that the amended complaint was filed, your honor, the ordinance had not yet been enacted. And in fact, the applications were filed before there was any legislative process that had even begun. And so that's the problem with applying the pending ordinance doctrine. In this case, once this, once the applications were submitted and I have, you know, these are attached as, as copies to the complaint, they have a received stamp date, April 27, 2021. And in fact, they not only have the received. Were these provisions that you were challenging, were they ever enforced against you? Yes, they were absolutely enforced against us. The, this document in particular, which is JA88, this has a date of April 30th, 2021. That was, and it says disapproved by on most of these applications, it's crossed out. And the only implication or inference is. I know, but, but your order, the order is pending because your application was filed after May 25th. No, our applications were originally submitted in April. Excuse me a minute. I thought it was filed after May 25th and it was filed as I've, I thought it was filed after the first reading. And then you go to covenant media, they ask what's pending and what's not. And if something was, if the application was filed after the first reading, those provisions that you're challenging are no longer part of the ordinance. It just to me is a question of precedent as to why that, why that wouldn't be moot under covenant media. Thank you, Judge Wilkinson. Let me read to you from the record and particularly this section. Each permit application shows the stamped received date of April 27th and defendants acknowledge the April 2021 date in their motion. And in, in the record, there is a motion that is the dispositive motion here in this case that, where the county actually admitted that the applications were submitted in late April. Let me read that to you. In late April, 2021, Adams submitted a number of incomplete applications to erect new or updated existing billboards, all with digital displays. In May, the county returned the applications to Adams noting how they were incomplete. The county also began revising its sign regulation. So the county has stopped at this point in time from claiming that these applications were not submitted in April. Does it matter that they were incomplete? Uh, Your Honor, with respect to the allegation that they were incomplete, we don't concede that they were incomplete and that issue was not determined. But if they were, um, then would they have been filed in May instead of April? Would they be regarded as applications if they were incomplete? Right. Well, they, they were regarded as applications because obviously they were pending ordinance doctrine. They put the county on notice that they were seeking permit applications on these 11 locations. Number three, the county treated these as applications that were later supplemented. It's in the record that they say, um, with respect to these incomplete applications, we've received your supplements. They don't treat them as new applications in May or June. They relate back to the original April application dates. Judge Miles correctly pointed out at the beginning of this whole argument, you have all these different arguments and you're making different claims with respect to each of the arguments. But the arguments do have one thing in common. Um, and that is that they have real jurisdictional problems. In some cases, the problems relate to standing. In other cases, they relate to mootness. In other cases, they relate to younger questions. And, but they, they're all threshold jurisdictional problems that seem to me significant in trying to, um, you would get a, the dismissal would likely be one without prejudice and you could take your case over to, um, over to state court. And, um, I have the South Carolina courts, um, they're not unfamiliar with the pending ordinance doctrine or some of the other things that you're talking about. And they're the ones that are most affected, uh, by this. You've got the citizens of this county that they want a scenic county. Um, it's pretty clear with these that is what the ordinances are trying to get to. And why wouldn't it be better? Dismiss these claims without prejudice, given the significant jurisprudential, jurisprudential hurdles that exist with them, send them to state court, have the state courts and the zoning process there deal with what affects the citizens of this county. Um, and not have us trying to run through these, trying to clear these jurisdictional hurdles, which seem to me substantial. The younger claims, for example, you just played cat and mouse with the court. And, um, I don't understand why they shouldn't be, if looking at the case as a whole, why the whole thing shouldn't be shifted to state court and letting these, letting these folks deal with what is purely a state law ordinance. Well, your honor, a couple of things on that. Number one, the, um, city of Austin case, the Supreme court accepted certiorari on that case. They didn't think it was solely a local dispute. The fifth circuit, uh, which had its decision reviewed by the Supreme court, didn't think that it was solely a local issue. They treat it as a first amendment issue. And I think that's what it is. And I think federal courts are open to hear first amendment disputes. Second of all, with respect to the jurisdictional issues, the jurisdictional issues rise based upon two issues. Number one, the mootness rest on the pending ordinance doctrine, which is inapplicable in this current case. But you're kind of asking us to, to decide cases, situations where the claims may well be moot. Other claims, there's no standing because positions that you're challenging never been enforced against you. Um, the younger claims are, I mean, those claims are part of a state court proceeding. We don't have a ability to, um, I, it, it, it, it just seems to me that we are being asked to resolve a lot of controversies that are not there or haven't been fully formed. These people want a scenic county. They're the ones that affected, and why shouldn't the state courts take a look at it? And these are, these would all be dismissals without prejudice. Thank you, Judge Wilkinson. I see I'm out of time. If I could just address the standing question briefly, um, the standing question, this court and district courts have consistently held that outdoor advertising companies and other speakers who are subject to sign ordinances have standing to challenge the bases for the denial of permits. And so our amended complaint states constitutional challenges to the provisions that were used as the basis for denial of each of the permits. And those claims, we do have injury in fact, and we do unquestionably have standing on those claims. All right. Thank you, counsel. Mr. Berkhold. Yes. Good morning, your honors. May it please the court, Scott Berkhold on behalf of Applee-Buford County. We ask that this court affirm the dismissal below with the small caveat that for those claims that the district court found that Adams Outdoor lacked constitutional standing, that those should have been dismissed without prejudice rather than with prejudice. But I want to go directly to Judge Diaz's opening question, which is very important. Where did you plead or where did Adams plead in the complaint, the amended complaint? Anything just a little louder. Yes. Where did Adams plead in the amended complaint? Anything about the April submissions? They did not. The only allegation in the amended complaint about permit applications is in the record at 13, paragraph 25 of the complaint under the heading Adams permit applications, which says on paragraph 28, on or about May 27th, 2021, the county received Adams permit application to build a new digital billboard at 1049 Road. And then on June 1st, the county received 10 more applications for other locations for new billboards. So there is no complaint. There is no allegation in the complaint about the April 27th submissions. In fact, the April 27th applications, which were woefully incomplete, are not even in the record. That's how far we are down the road from those. Those were deemed incomplete. What we do have in the record, and this is at pages 213 to 234, are the incompleteness letters, all the ways in which 10 or 11 different grounds of things that were not submitted and made them incomplete. And they raised no argument about that determination that those were a legal nullity. Those could not have any action to take a substantive ruling on those incomplete applications. So what we have is we have the May 27th and June 1st applications. Those came two days after the first reading of the ordinance, three days after the first reading of the ordinance, and two days after the advertisement of the public hearing on the ordinance. And on that, Judge Wilkinson is directly on point that Covenant Media controls that squarely. In Covenant Media, you had a first reading of the ordinance by the County Council on September 15th, 2005. You had an advertisement for the public hearing 13 days later on September 28th, 2005 for October public hearing. And then two days after the September 28th notice of publication of the public hearing, you have the applications, the completed applications submitted by Covenant Media. And so this court, without talking about planning commission or anything like that, because the pending ordinance doctrine doesn't have anything to do with a recommending body and what it does, the pending ordinance doctrine has two parts. Does the governing body, which in this case is the Beaufort County Council, have they evinced an intent to regulate in this space? And then number two, have they advertised their intent to hold a public hearing? So you would absolutely have to overrule Covenant Media to agree with the opposing party on the mootness issue and the pending ordinance. The basic problem is that there's a challenge to provisions that are no longer in existence. And then there's a challenge to other provisions which haven't been ever enforced or applied. Exactly. That's why there's no jurisdiction. There are two sets of problems. One is a mootness problem and then there's a ripeness problem. The mootness problem refers to the provisions that are no longer there in the audience and the ripeness problem, such as it is, refers to provisions that haven't ever been enforced or I want to correct my opposing counsel's argument that the old ordinance was enforced against his client. That's not true and he admits it in the record at JA 186. This is in bold italics underlined in their brief in opposition to the motion to dismiss. Adams admits that the denial of the May 27th and June 1 completed applications, the only completed applications in the record, was based on the new signed ordinance, the current signed code. So they admit there was no allegation and then six pages later, six pages later at joint appendix 192, Adam admits that it never claims that the completed applications should have been granted, only that there were constitutional problems with the old ordinance. In other words, this is exactly why the standing doctrine exists. The billboards were banned under the old ordinance, the billboards are banned under the new ordinance, and they say we submitted applications and the only ones they allege in their complaint are the May and June applications after the ordinance, the current signed code, was already legally pending under South Carolina law and then they say oh and we don't say we are entitled to get permits under the old ordinance or the new ordinance. We just wanted to have a bite at that apple because we think that had constitutional infirmities and that's exactly what the pending ordinance doctrine is about. If you look at the seminal case from the South Carolina Supreme Court, Sherman says, Sherman v. Rivas, that the court has only found vested rights to have an application determined under a previous zoning ordinance in two cases. One is where you have an actual issued permit and you've expended funds, that's when you have a vested land use right under state law. Or number two, where you show that you have good faith reliance upon the previous zoning ordinance permitting what you wanted to do. And of course, just as in Sherman where they said we have neither one of those cases here, we certainly have neither one of those cases in this situation because A, there was no issued permit, nobody went out and constructed a billboard, and then number two, there was no good faith reliance on the previous version of the zoning ordinance such that they could have these applications considered under that old ordinance because as they admit, the old ordinance banned billboards, new billboards also. So we basically have a hypothetical exercise for an advisory opinion that has no place in the federal courts. So how they address, so there's two sets of claims, the younger abstention claim and the younger abstention bar to the certain claims about the rebuilding. Where is the controversy? Or you look at this as, you know, where is the there there? I mean, where is the, there may be a controversy at some point, but it just seems a little abstract. It certainly is. In fact, to your point, your honor, that the state courts are the proper venue for all these disputes is not only did they get prosecuted under the old ordinance for the two illegally rebuilt billboards, that's why younger abstention kicked in at the district court, and they agreed to withdraw those claims under younger abstention, and they actually asked for the opportunity to replead at page 205 of the joint appendix. And when the court granted dismissal and gave them the opportunity to replead at page 343 of the appendix, they could have done so. In fact, they didn't, and that happened in 2023. The admitted complaint was filed in the summer of 2021. Obviously, when they got denied their permanent applications, at that point, normally what you would do is you come in and say, okay, they have a new ordinance and they denied us under that, which they admit at JA 186. What happens to these younger claims? Because Adams consented to younger abstention, and then they asked the district court for leave to amend, and then they never filed the amended complaint. And so the whole, with respect to the younger claims, the whole thing seemed to be a sort of cat and mouse. It was. To ask the court for leave to amend, you don't have a file on amended complaint, and then you know, you blow hot and cold in the one hand, you know, you seem to consent. Adams seems to consent to younger abstention, but maybe not. And it just, um, I don't know. Well, your honor, to your point, at page 205 of the joint appendix, they say, if the court determines that our claims are moot, then we would request the opportunity to replete. They actually asked for that. And because of the new ordinance, they say, if because of the new ordinance, the current sign code, then we ask for leave to replete. And then when the court eventually issues its opinion and gives them that opportunity, they don't replete. So consistent with Nivens v. Gilchrist, the court dismissed those claims with prejudice. What's happened in the state court since then is they were convicted of those claims. The state trial court said that procedural hiccup in the citations required vacator of those convictions. And last month, we argued that in the South Carolina Court of Appeals. So they've had a full panoply of due process on all these claims in the state court. In addition to that, the city or the county has filed an application for injunction to take down the illegally rebuilt billboards. And in that case, they counterclaimed with 150 paragraph counterclaim that is basically the amended complaint in federal court. So now we have a joined issue in the state court of everything that is in this case. That all arose after the district court's judgment. But essentially, we have a counterclaim in state court that raises all of the alleged constitutional claims that are pending here. So the younger case is the younger determination by the district court was right. The determination of the district court that the pending ordinance doctor applies was spot on correct under covenant media. And then finally, the district court's decision that these plaintiffs lack standing to challenge temporary signs, their erecting permanent billboards or regulations about signs, signs attached to the sides of commercial buildings or yard signs or any of these other things. They did not show an injury in fact from each element of the ordinance that they sought to challenge. And so that's black letter law. And sure, there's a lot of billboard cases in the federal circuits about how you can have standing or overbreath, but you still have to show injury in fact from each provision that you seek to challenge in an ordinance. And that goes all the way back to 1990 with FWPBS versus City of Dallas. So the circuit courts are uniform. We think that this court should affirm the dismissal of the district court with the minor caveat that for those claims on the provisions of the ordinance that have no implication with billboards and the district court found that Adams lacked standing to challenge those, that dismissal should have been without prejudice. Thank you. Thank you. So Tibbles, you got some rebuttal? Yes, thank you, your honor. I just want to correct one, you know, issue on the younger claims and the abstention because I heard you, Judge Wilkinson, and I heard you saying that there was a cat and mouse game being played and I can assure you that's not the case. What happened was the county, well, we consented to the abstention and we agreed to withdraw the claims without prejudice. And then when the order came in allowing an amended pleading, it restricted that amended pleading to ensure that that amended pleading could only plead claims against the new ordinance. And our position was we do not want to claim against the new ordinance. We have constitutional claims under the old ordinance. And in fact, the county's specifically reserved all damages claims, but we specifically reserved all claims. They can argue that the equitable claims should be dismissed with prejudice, but that doesn't translate to the damages claims, which the county concedes should not have been dismissed with prejudice. And the county instead argues that Adams waived the damages claims by not filing an amended pleading challenging the new ordinance, but of course that would have meant acceding to the idea that the pending ordinance doctrine applies. Let me just touch on a couple of other points before my time is out today. Even if the court declines to view Rule 10C as including the pending ordinance doctrine still fails under this case because even considering applications made in May and June, the county had not yet reached a point in its process where they had resolved to consider new ordinance provisions. And specifically there had been no planning commission meeting and the county says the planning commission meeting is irrelevant and unimportant to the process. And they say that despite the fact that their code of regulations requires planning commission review and approval before the first public hearing can be held by council on a planning commission meeting, there's a review and a recommendation by the planning commission and then it goes before two or three readings of council depending. And so in this case they had irregularities in their process and there's no question that a reasonable inference of what happened based upon the permit application dates is that they received the permit applications, they declined to rule on those applications despite Ms. Austin signing and dating declination of permit applications on April 30th. Those were crossed out and ignored. The inference is somebody told her to do that, somebody told her to wait, somebody told her that you shouldn't be ruling on these permit applications. And if as the county contends these permit applications were incomplete when they were submitted in April, why was the county prepared to deny on April 30th? And also if the applications were obviously incomplete, why did it take a month to let Adams know that their permit applications were incomplete? They didn't receive notice, the county didn't send letters until the end of May after receiving the permit applications on April 27th. And so if it was obvious that these sign applications were deficient on their face, why did it take so long to point out the obvious? Can I ask you about this issue regarding the planning commission? Doesn't South Carolina law allow either for the governing authority to hold a hearing or the planning commission and didn't the former occur in this case? There was a public hearing and the public hearing was noticed. The notice for the public hearing was deficient in several respects under the county's own regulations. It failed to contain a number of items of information that the regulations require. And in fact, when the amended complaint was filed, Adams did not know that there was legislation in process. In fact, one of the allegations in the amended complaint says several of the items in the denial letters misstate the ordinance. And that's because there was no understanding that those, that there was any process that had even started on that. And I think if there had, if the process had been done properly, then we would be in a different position today because we would have noticed properly under the CDC and we would have made more clear the distinction between the original permit application submissions and the supplemented applications, which were not treated as new applications by the county. So both Scott and Covenant Media, well, Covenant Media, there's no discussion of a planning commission meeting in Covenant Media. We don't know why that is, whether it was consented to issue or otherwise, but there is discussion of planning commission meetings in both Sherman and in Scott. And both of those opinions, it's alleged, it's held by the court that the planning commission meeting is almost a prerequisite. It's akin to an initial step of the process and therefore the pending ordinance doctrine should not apply until at least that initial step has been completed. I see I'm out of time. Thank you, Your Honor. Thank you, counsel. Thank you both for your arguments. We'll come down and greet you both and then proceed to our final case.
judges: Albert Diaz, J. Harvie Wilkinson III, Diana Gribbon Motz